## No. 17,019.

CLARK v. JOSLIN DRY GOODS COMPANY.

(262 P. [2d] 546)

Decided October 5, 1953.    Rehearing denied October 26, 1953.

Mr. MANDEL BERENBAUM, Mr. JOSEPH BERENBAUM, for plaintiff in error.

318

Messrs. McComb, Zarlengo, Mott & Schmidt, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the court.

These parties appear here in the same order as in the trial court, and we will refer to them as plaintiff and defendant.

The writ of error issued herein is for review of a judgment of dismissal of plaintiff's action after the conclusion of her evidence. By her amended complaint plaintiff sought $25,000 damages, alleging that on March 26, 1951 the defendant, or its agent, "was negligent while in the process of washing their store windows, which caused water to cover the sidewalk" adjacent to defendant's store, and as a result thereof plaintiff fell to the sidewalk and sustained certain injuries. Defendant answered and, after denying negligence, set up contributory negligence on the part of plaintiff, unavoidable accident and assumption of risk by way of affirmative defenses.

The evidence discloses that plaintiff at the time of the accident was sixty-one years of age, weighed 285 pounds, had high blood pressure, together with other ailments; that she had sustained at least two other falls, and had used a cane since 1936 to assist her in walking. On the day of the accident she was carrying several bundles or packages in addition to the cane, and in walking along the sidewalk adjacent to defendant's store observed a man who was washing the windows.

From the testimony of several witnesses it appears that a number of small "trickles" or rivulets of water resulting from the window washing operation, ran from the building and across the sidewalk to the curb. Plaintiff testified that she observed these several "trickles" of water and knew that because of her age, weight, and other infirmities she was "going to have to be careful."

There is no evidence in the record to indicate that the window washing being done on the morning of the accident, was conducted in other than the usual and customary manner of performing such task. There is nothing to show that the resulting "trickles" of water, running across the sidewalk to the curb, created an unusual or hazardous condition, dangerous to the plaintiff, or other pedestrians passing along the sidewalk adjacent to the defendant's store. We quote from plaintiff's testimony: "Q. Tell the jury what you noticed on the sidewalk with reference to water. A. When I got to this side of the street there were a good many trickles of water across the sidewalk, and I realized I was going to have to be careful, always depending on the cane. So I don't know how many trickles were there, but they were there, and I know I stepped across one, and I believe my cane slipped at one, because the first thing I know there was a slip. * * * I know I just flipped like that, and I know I hit this shoulder. Q. All right, Mrs. Clark, you don't know exactly what caused it? A. I don't."

Plaintiff's witness, John I. Hammonds, testified in answer to a question: "Well, a lady that had come up in the crowd said: 'what happened,' and I said 'I don't know; I think she fainted,' and Mrs. Clark said: 'No, I didn't faint, I slipped.'" On cross-examination this same witness was interrogated, and answered as follows: "Q. As you proceeded up Sixteenth Street when did you first see the water on the sidewalk? A. I didn't notice the water in particular until I came back. I noticed there was water on the sidewalk, but didn't— Q. You didn't see it as you walked over it? A. Yes. Q. What appearance did it have at that time? A. Just water. Q. Was it all over the sidewalk? A. Well, it was drained from the window to the curb in rivulets, in little circles. Q. Well, how many were there? A. I couldn't say. Q. And how wide were they? A. I couldn't say that either." The same witness said that in traversing the sidewalk he encountered no difficulty in maintaining his footing on the

320

walk. He also said that when the police officers arrived after the accident "there was hardly any water noticeable."

■ Where all the evidence and the legitimate inferences to be drawn therefrom are not in dispute, and where the precise measure of plaintiff's duty is clearly defined, it is the duty of the trial court to determine the issue as a matter of law.

■ ■ We said in *Garbanati v. City of Durango,* 30 Colo. 358, 70 Pac. 686: "When a person travels along a sidewalk which he knows to be dangerous, he cannot recover for injuries sustained resulting from defects of which he had knowledge, unless he exercises care commensurate with the danger about to be encountered, and his ability to cope with it. The precautions which an ordinarily prudent person in the full possession of his physical faculties would take to avoid danger would be wholly insufficient to protect one from the same danger whose physical faculties were impaired."

■ A careful examination of the entire record herein leads to but one conclusion, for it shows that there was no room for an honest difference of opinion between intelligent and fair-minded persons. The injuries complained of were not attributable to such an act or omission on the part of defendant for which it should be held liable.

The judgment is affirmed.