## No. 19,790.

NATHANIEL C. MOSELEY *v*. MARTHA J. LAMIRATO, ETC.

(370 P. [2d] 450)

Decided March 12, 1962.   Rehearing denied April 23, 1962.

Messrs. ENOS, BUCHLER & DEISCH, for plaintiff in error.

Mr. SAMUEL J. EATON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

THE present controversy had its origin in a two-car automobile collision which occurred on October 13, 1959, at about 8:30 o'clock A.M. on West 6th Avenue at the Valley Highway overpass, in Denver.

In her complaint Lamirato alleged that she was driving her car in an easterly direction on West 6th Avenue and that in the immediate vicinity of the Valley Highway overpass she stopped her vehicle because the entire line of traffic in which she was traveling had stopped; that after having been in this "stopped" position for several minutes Moseley, who was also traveling in an easterly direction on West 6th Avenue, negligently drove his vehicle into the rear end of her automobile; that as a proximate result of Moseley's negligence Lamirato suffered damage in that (a) her automobile was damaged to the extent of $149.33; (b) she "was severely and seriously injured, causing her to suffer injury to her spine, together with contusions and muscular injury and internal hemorrhage of the tissues, which have resulted in permanent injuries . . . , together with extreme pain and suffering and permanent disability"; and she prayed for judgment against Moseley in the amount of $20,000.

In a second claim Lamirato alleged in essence that Moseley and his agent, the Crocker Claims Service, perpetrated a fraud upon her and in this regard sought judgment against Moseley and Crocker Claims Service

in the sum of $1,000 as actual damage, and in the sum of $2,000 as exemplary damage.

In this second claim Lamirato alleged that Crocker Claims Service, acting as the agent for Moseley, did state and represent to her that if she took her automobile to a certain garage her vehicle would be repaired "at no cost" to her; that this representation was false and untrue in that Crocker Claims Service "knew at the time the statements were made that the repairs . . . would not be made at no expense to her unless . . . (she) executed a general release of all claims pertaining to . . . the accident"; that relying on this representation she in fact delivered her damaged automobile to the garage selected by Crocker Claims Service, but that when her vehicle was repaired the operator of the garage acting on instructions from Crocker Claims Service refused to turn over the automobile to her unless she executed a general release, which she refused to do; and finally that as a result thereof she was compelled to borrow money to pay the repair bill and obligated herself to pay interest at the rate of 8% per annum on such loan, and that she suffered additional damage in that the attendant delay caused by the incident deprived her of the use of her automobile for thirteen days.

By answer Moseley admitted the collision, but denied that any negligence on his part caused any resultant damage to Lamirato, and affirmatively pled contributory negligence and unavoidable accident. In connection with Lamirato's second claim Moseley denied all.

This litigation was "at issue" on June 15, 1960, and in due time came on for trial to a jury on February 20, 1961. Only minutes before impaneling of the jury, Moseley for the first time orally moved that Lamirato's two claims be separately tried for the reason that "it would be highly prejudicial to . . . Moseley to have the two causes of action tried in the same case." With no extended argument, this motion was denied. However, at the conclusion of her case the trial court dismissed

Lamirato's second claim as to both Moseley and Crocker Claims Service, apparently on the ground that there was a paucity of evidence to support the allegations set forth therein.

At the conclusion of all the evidence the trial court granted Lamirato's motion for a directed verdict in her favor on the issue of liability, and thereafter submitted to the jury the one question relating to the extent of her damage. The jury fixed her damage at $7,800, and appropriate judgment was entered thereon.

In his motion for new trial Moseley states that the trial court erred in the following particulars: (1) the trial court erred in refusing to order that Lamirato's two claims be separately tried; (2) that there was no competent evidence that Lamirato suffered any permanent injury, and hence it was error to instruct in connection therewith; (3) it was error to hold that Moseley was negligent as a matter of law; (4) that error was committed in allowing an osteopathic physician and surgeon to testify as to Lamirato's physical condition and to express his opinion as to the permanency of her injuries; and (5) the verdict was so excessive as to "indicate passion, prejudice or unaccountable caprice on the part of the jury." This motion was denied and Moseley is here by writ of error seeking reversal of the judgment.

The assignments of error urged by Moseley are the same as the grounds set forth in his motion for new trial. To more fully understand these various assignments it is essential that they be viewed in the light of the evidence adduced upon trial. Hence, a brief recital of the evidence is in order.

There is little dispute as to the manner in which the accident occurred. Lamirato was stopped because the line of traffic immediately in front of her was stopped. After having been stopped for an appreciable time interval of from one to three minutes, the Lamirato vehicle was struck in the rear end by the front end of the Moseley driven vehicle. Moseley was also proceeding in

an easterly direction on West 6th Avenue and he testified that he failed to see the Lamirato vehicle until it was "too late" to avoid striking it. On this state of the record the trial court did not err in directing a verdict against Moseley on the issue of liability. Neither the facts nor the inferences deducible therefrom are in dispute, and the measure of Moseley's duty, as well as that of Lamirato, is clearly defined. Under such circumstances the question of negligence and contributory negligence is one of law, properly to be resolved by the Court. See, for example, *Grand Junction v. Lashmett,* 126 Colo. 256, 247 P. (2d) 909; *Clark v. Joslin Dry Goods Company,* 128 Colo. 317, 262 P. (2d) 546; and *Ridenour v. Diffee,* 133 Colo. 467, 297 P. (2d) 280.

The real dispute centers around the extent of Lamirato's injuries. In short, Lamirato contends that she suffered a "whip-lash" type of injury to her cervical spine which is of a permanent nature, whereas Moseley's position is that her injuries were slight, if any, and most definitely not of a permanent character. Lamirato testified that she was thrown forward by the impact, striking her head on the rear vision mirror and was then thrown violently backward onto the seat. She admitted that initially she was uncertain as to whether she had suffered any physical injuries. However, she was taken from the scene of the accident directly to her family doctor, who, after a preliminary examination, sent her to a hospital for x-ray examination. Thereafter she was returned to the doctor's office for a more thorough examination. While walking from the car into her doctor's office she apparently fainted — at least she collapsed, fell to the ground and was carried into the office. She testified at considerable length as to the continuing pain and discomfort in her neck area. At trial, which was one year and four months after the accident, she claimed she was still suffering from this neck injury incurred as a result of Moseley's driving misconduct.

Lamirato's only medical witness was her family doctor,

an osteopathic physician and surgeon licensed in Colorado since 1931. It was brought out that osteopathy is a practice of medicine primarily concerned with the bony structure of the body, and the doctor testified that in the last ten years of his general practice he has treated about twenty to thirty cases of "whip-lash" type injury to the cervical spine. Over the objection that he was not properly "qualified," this doctor then testified as to osteopathic services actually rendered by him to Lamirato. He further testified, in essence, that Lamirato suffered in this accident a "whip-lash" injury to her cervical spine, that her "neck tissues were stretched beyond their physiological range, not beyond their anatomical range, because if they were [stretched] beyond their anatomical range, they would be bursted." He related the treatment which he had prescribed, namely manipulation, ultrasonic sound therapy, and the like. He medically opined that Lamirato was suffering pain and discomfort in the neck area as of the time of trial and that in his opinion such would continue long into the future. With candor and frankness he admitted that he could not predict with certainty how long this pain and discomfort would continue. However, in substance he testified, without objection, that it could well be for the balance of her life.

Moseley called only one witness, an orthopedic surgeon, who testified that he examined Lamirato on one occasion, namely July 7, 1960, and that this examination was sufficient to convince him that she suffered no permanent injury in this automobile accident.

■ Moseley's contention that it was error to permit the osteopathic physician and surgeon to express his opinion as to the permanency of his patient's injuries is without merit. Incidentally, no authority in support of this particular assignment is cited. This doctor could, of course, testify as to his examination, diagnosis and treatment of Lamirato's injuries. The narrow point raised by Moseley is that the osteopath was not sufficiently quali-

fied to permit him to make a prognosis or to express his opinion as to the permanency of Lamirato's disability. Under the circumstances his testimony on this particular issue is admissible, the weight to be given such being a matter within the province of the jury.

Moseley next assigns as error the fact that the trial court over objection gave an instruction to the jury concerning permanent injuries and in connection therewith advised the jury as to the applicable portions of our mortality table. There is no evidence, be it of a direct or circumstantial nature, which would warrant submission to the jury of the question of permanent injuries, says Moseley. In other words, he contends the trial court should have determined as a matter of law that Lamirato suffered *no* permanent injuries.

By defining permanent injuries the trial court was not instructing the jury that Lamirato had in fact suffered permanent injuries; rather the trial court was recognizing that whether she had suffered such injury was a disputed question of fact to be resolved by the jury. Careful examination of all the testimony, from both lay and expert witnesses, bearing on this issue convinces us that it would have been error for the trial court to rule out permanent injury as a matter of law, and the matter was properly submitted to the jury under instructions which are not here challenged by Moseley as being inaccurate statements of the law. His complaint is that *no* instructions on permanent injuries should have been given the jury. However, on the record before us the issue of permanent injuries and future pain and suffering was a disputed issue properly to be resolved by the jury.

The jury determined Lamirato's total damages to be $7,800, which Moseley contends is "so excessive as to indicate passion, prejudice or unaccountable caprice on the part of the jury." Though the award might seem excessive to some, still it is not of such astronomical proportions that an appellate court would be justified in

setting it aside on the ground that it is excessive as a matter of law. It is difficult at the best to translate personal injuries into dollars, and the jury's determination of damages suffered should not be set aside unless it clearly appears that the award is grossly excessive and motivated by something other than the evidence in the case. No such situation prevails in the instant case.

The remaining assignment of error advanced by Moseley is predicated on the refusal of the trial court to order that the two claims of the complaint be tried separately. Rule 42 (b) R.C.P. Colo. provides that "the court in furtherance of convenience or to avoid prejudice *may* order a separate trial of any claim . . ." (Emphasis supplied) The rule is permissive, not mandatory, and vests in the trial court considerable discretion as to whether there shall be a separate trial for each claim of a multiple claim complaint. It is axiomatic that a ruling by the trial court in an area where it has discretionary power will not be disturbed on review, unless it be clearly shown that there was an abuse of such discretionary power. In the instant case seven months elapsed between the time this case was "at issue" and the time when it came on for trial. No request for a separate trial was ever interposed until only moments before the commencement of the trial proper. Under such circumstances Lamirato's counsel had the right to assume that there would be a trial of all issues framed by the complaint and the answers, and presumably all readied for trial on this premise. The belated request for separate trials of the two claims was undoubtedly prompted by the well-founded belief that trial of the second claim would advise the jury that Moseley carried liability insurance. However, during the trial proper, no objection was ever voiced by Moseley when reference was made to "insurance," and when the second claim was dismissed there was not even a request that the jury be instructed to disregard the evidence offered in connection with this second claim. Under such circumstances there was no

error committed by the trial court when it denied the belated and untimely motion. *Young v. Colorado National Bank,* 148 Colo. 104, 365 P. (2d) 701, at page 712.

In *Greenspon v. Parke, Davis & Co.* 8 F.R.D. 485 a motion for a separate trial of the defense of laches, this motion being filed pursuant to Rule 42 (b) of the Federal Rules of Civil Procedure for the purpose of "convenience," was denied with the following comment:

"Had such a motion been made promptly after joinder of issue I would have regarded it more favorably ... At this late date, after interrogatories have been answered, depositions taken and the *case almost ready for trial,* I see no sufficient advantage in such a piecemeal trial of the issues of the case." (Emphasis supplied.)

*Larson v. Powell,* 16 F.R.D. 322, relied upon by Moseley, is simply an instance where a trial court in the exercise of its discretion granted a motion for a separate trial of a two-claim complaint, but is no authority for the proposition that reversible error necessarily follows from denial of such motion.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE FRANZ concur.