588 P.2d 877 (1978)
Pamela Opal Lee MURPHY, Individually, and Terry Michael Murphy and James Shannon Murphy, Individually and through their next friend and mother Pamela Opal Murphy, Plaintiffs-Appellees,
v.
COLORADO AVIATION, INC., Defendant-Appellant.
No. 76-635.
Colorado Court of Appeals, Div. I.
August 3, 1978.
Rehearing Denied September 28, 1978.
*879 Herbert Hafif, John W. Elliott, Claremont, Cal., Hoffman, McDermott & Hoffman, Gene M. Hoffman, Denver, for plaintiffs-appellees.
Paul D. Renner, P. C., Paul D. Renner, L. B. Ullstrom, Denver, for defendant-appellant.
STERNBERG, Judge.
Audie Murphy was killed in the crash of defendant's airplane in Virginia. The plaintiffs, who are Murphy's widow and their two sons, filed this suit for damages under the Colorado Wrongful Death Statute, claiming that Murphy's death was caused by the negligence of defendant's pilot. The jury agreed and awarded the plaintiffs damages of $2,500,000. Judgment was entered on the verdict, and defendant appeals. We affirm.
According to the evidence, on May 28, 1971, an Aero Commander airplane owned by the defendant, a Colorado corporation, and piloted by its secretary, Herman Butler, left Atlanta, Georgia, bound for Martinsville, Virginia. It did not reach its destination, but crashed on Brushy Mountain, located fourteen miles from Roanoke, Virginia. The five people on board, including Audie Murphy, were killed.

*880 I. CHOICE OF LAW
Of defendant's numerous contentions of error, we address first its assertion that the Virginia Wrongful Death Statute with its then applicable $75,000 damage limitation should have been applied, rather than the Colorado Wrongful Death Statute which contains no such limitation. Defendant reasons, in this regard, that while the mechanical application of the lex loci delicti rule was rejected in First National Bank v. Rostek, 182 Colo. 437, 514 P.2d 314 (1973), and the "most significant relationship" test adopted, nevertheless, under that test, Virginia, not Colorado, has the most significant contacts with this accident.
Under Rostek, the choice of law rule applicable to multistate tort controversies is the "significant contacts" approach delineated in Restatement (Second) of Conflict of Laws § 145. Here we are dealing with choice of law in a wrongful death setting and therefore look to the Restatement § 175 which provides:
"In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." (emphasis supplied)
The principles in the Restatement § 6 pertinent here are:
"(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, . . .
(g) ease in the determination and application of law to be applied."
Also the Restatement § 178 provides that the law selected by application of § 175 determines the measure of damages.
Applying these principles of the Restatement to the interest and policies of the various states, we note that Murphy and his family were California residents and the only interest of Virginia is that the accident occurred there. Contrasted with these are the facts that the aircraft was registered and hangared in Colorado, and was first entrusted here to the pilot who did not have an instrument rating.
We conclude that Colorado has an interest outweighing that of the other states. That interest is to see that domestic corporations, owning sophisticated aircraft which are hangared here, do not negligently entrust them to pilots not having the appropriate flight training. See Sabell v. Pacific Intermountain Express Co., 36 Colo.App. 60, 536 P.2d 1160 (1975); See also Rostek, supra.
Defendant asserts, however, that even if the Colorado Wrongful Death Statute were correctly chosen, Mrs. Murphy is not a proper party because she lost her right to sue by neglecting to bring this action within one year after her husband's death. We disagree.
Under § 13-21-201(1), C.R.S.1973, although a decedent's spouse loses her exclusive right to sue after one year, she can maintain an action at any time before the expiration of two years jointly with the decedent's children. Peck v. Taylor, Colo. App., 554 P.2d 698 (1976).
We consider this rule applicable to C.R.S. 1963, 41-1-1, that being the identical predecessor to § 13-21-201(1), C.R.S.1973, and the statute under which this action originally was brought. Cf. Clint v. Stolworthy, 144 Colo. 597, 357 P.2d 649 (1960).

II. TESTIMONY OF WITNESS ZACKO
What we perceive to be defendant's principal contentions of error are those related to the testimony of Joseph Zacko, a retired National Transportation Safety Board (NTSB) accident investigator who supervised the investigation of this crash. Defendant argues that Zacko had not been endorsed properly as a witness, that federal statutes and regulations prohibit his testimony, and that, in any event, his testimony was inadmissible hearsay. Other rulings of the trial court with respect to specific portions of his testimony are also attacked.

*881 A. Failure Properly To Endorse Zacko.

Zacko was originally listed as one of plaintiffs' witnesses, but at the pretrial conference, plaintiffs agreed to strike his name as a non-essential witness who would give only cumulative evidence. During argument on motions in limine, when the admissibility of the NTSB report of the accident was discussed, plaintiffs' counsel stated that he intended to establish a foundation for the admission of the report in part by Zacko's deposition, but also indicated that Zacko would be willing to come from his Maryland home to testify personally. No comment was made by defendant's counsel at that time. When trial began, plaintiffs called Zacko as their first witness. Defendant objected, claiming prejudice and surprise, because Zacko's name had been stricken and defendant therefore had not deposed him.
Plaintiffs asserted that they needed Zacko's testimony because the deposition testimony of one Wells, an NTSB investigator who had personally investigated the accident site, revealed that the latter had virtually no independent recollection of this particular accident. Plaintiffs made an offer of proof, and the court, being reluctant to delay the trial, ruled that Zacko could testify, but gave defendant an opportunity to depose him in the evening, before he testified. This was done.
Trial courts have broad discretion in allowing deviations from the terms of pretrial orders entered under C.R.C.P. 16. See In Re the Estate of Gardner, 31 Colo. App. 361, 505 P.2d 50 (1972); and Francisco v. Cascade Investment Co., 29 Colo.App. 516, 486 P.2d 447 (1971). It is not an abuse of discretion for the trial court to allow a witness who is not endorsed on the pretrial statement to testify, especially, where, as here, defendant had knowledge of the witness and was given an opportunity to, and, did depose the witness before he testified. To hold otherwise would be to treat pretrial orders as straitjackets, the bonds of which must never be loosened. Of necessity trial courts may modify such orders to prevent manifest injustice. Ferguson v. Hurford, 132 Colo. 507, 290 P.2d 229 (1955). And, appellate interference with the trial court in this area must be kept at a minimum. Glisan v. Kurth, 153 Colo. 102, 384 P.2d 946 (1963).
Nor do we consider the trial court's refusal to allow a continuance of 20 to 30 days so that defendant could obtain experts to refute Zacko's testimony to be an abuse of discretion. See Dilworth v. Leach, 183 Colo. 206, 515 P.2d 1130 (1973).

B. Federal Statutes And Regulations Proscribing Certain Testimony Of NTSB Employees.
At trial, Zacko testified that he was a former NTSB employee who, in 1971, was supervisor and coordinator of the NTSB team assigned to investigate this accident. After he was qualified as an expert, Zacko explained and interpreted numerous technical terms included in the report. He testified that the accident site at the time of the crash was obscured by clouds, that such weather conditions would have required the pilot to use instruments to maneuver the plane properly, and that Butler, defendant's pilot, was not qualified to fly with instruments. Various documents attached to the NTSB report were introduced into evidence, but the entire NTSB report itself was not admitted. Zacko used the report to refresh his recollection of the circumstances of the accident.
Defendant's contention that Zacko should have been prohibited from giving an expert opinion is based on 49 U.S.C. § 1441(e). That statute provides that:
"No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports."
This section most recently has been interpreted narrowly by both state and federal courts, which have held that air safety investigators may give their opinions, as well as relate factual evidence, so long as they *882 do not testify to their own or the Board's ultimate conclusion concerning the probable cause of the accident or the negligence of the defendant. See American Airline, Inc. v. United States, 418 F.2d 180 (5th Cir. 1969); Kline v. Martin, 345 F.Supp. 31 (E.D. Va.1972); Beech Aircraft Corp. v. Harvey, 558 P.2d 879 (Alaska 1976); Todd v. Weikle, 36 Md.App. 663, 376 A.2d 104 (1977); see also 49 U.S.C. § 1903(c). But see Israel v. United States, 247 F.2d 426 (2d Cir. 1957); Fidelity & Casualty Co. v. Frank, 227 F.Supp. 948 (D.C.Conn.1964).
The current federal regulation, 49 C.F.R. § 835.3(b), effective July 17, 1975, provides that:
"Board employees may testify as to the factual information they obtained during the course of the accident investigation, including factual evaluations embodied in their factual accident reports. However, they shall decline to testify regarding matters beyond the scope of their investigation, or to give opinion testimony concerning the cause of the accident."
Also, 49 C.F.R. § 835.7 limits the scope of testimony of former Board employees to these matters.
As we view Zacko's testimony, it fell within the guidelines of this regulation. He explained navigational aids, the factual circumstances surrounding the accident, the difference between visual (VFR) and instrument flight ratings (IFR), interpreted weather documents, indicated that weather information had been transmitted to the pilot from the Roanoke airport, stated that there was no evidence of any pre-impact malfunction of the aircraft, opined that only an IFR pilot should fly in clouds, that there was a safe alternate route for VFR pilots, and that under the prevailing weather conditions in the area at the time of the crash, only an IFR pilot could have been flying properly at the altitude at which the crash occurred. His testimony, however, while leading to such a conclusion, did not state that this accident was caused by the negligence of the pilot.

C. The Hearsay Character of Zacko's Testimony.
We also conclude that the hearsay attributes of Zacko's testimony do not preclude its admission. While Zacko, as supervisor of the investigation, flew over the accident site in the course of the investigation, he received much of his information from subordinates who personally inspected the crash site, and from Federal Aviation Administration and weather station information records which he incorporated in his report to the Board.
Zacko's testimony was hearsay, but an exception to the hearsay rule has been recognized where the proffered evidence is trustworthy and necessity compels its admission. See Good v. A. B. Chance Co., Colo.App., 565 P.2d 217 (1977); and 6 J. Wigmore, Evidence §§ 1691, 1692 (3d ed.). And, we conclude that the nature of the information in the report about which Zacko testified contained sufficient indicia of trustworthiness to justify the application of this exception. To the extent that it contains information transmitted by government employees who, as Zacko testified, were duty-bound to report their factual findings accurately, the report is an official record. These employees were directly responsible to Zacko. Much of the data about which he testified was contained in official documents routinely made and kept by the F.A.A. and other federal agencies. Nor is there any indication in the record that Zacko testified to factual information obtained by others which required them to make the kind of independent evaluative assumptions in recording the data which would cast doubt upon the validity of that data. See Berguido v. Eastern Airlines, Inc., 317 F.2d 628 (3d Cir. 1963). See also Wigmore, supra, §§ 1632, 1635.
The other facet of this hearsay exception, necessity, was also satisfied under the peculiar circumstances present here. Wells, the structural and operations NTSB inspector, had stated that he had little recollection of the details of his on-site investigation. The trial court did not abuse its discretion in allowing Zacko to refresh his *883 recollection from the NTSB report and to testify, rather than in insisting that plaintiffs call other federal employees from various locations who would testify as to bits and pieces of the investigation which they had conducted. See Good v. A. B. Chance Co., supra; Wigmore, supra, §§ 1631, 748, 752(a). See also McCormick on Evidence § 303 (3d ed.). Cf. Montgomery v. Tufford, 165 Colo. 18, 437 P.2d 36 (1963); Jordan v. People, 151 Colo. 133, 376 P.2d 699 (1962); Washington v. Washington, Virginia & Maryland Coach Co., 250 F.Supp. 888 (1966).

III. OTHER OBJECTIONS TO EVIDENCE
Defendant raises other objections to Zacko's testimony: That his deposition should have been admitted into evidence for impeachment purposes; that he was permitted to answer an improper hypothetical question; and that his testimony about the suspension of defendant's "air taxi" license prior to the accident as well as his testimony about citations issued to the pilot for two earlier violations should not have been permitted. All these objections are without merit, or are not sufficiently prejudicial to warrant reversal. Similarly, there was no reversible error in allowing into evidence Audie Murphy's death certificate, in keeping out his pilot's license, or in admitting Butler's pilot's certificate, the airplane registration certificate, the accident notice, and certain documents of sale.

IV. SUFFICIENCY OF THE EVIDENCE
Defendant contends that the trial court erred in not granting its motion for directed verdict. From our discussion above rejecting defendant's attacks on plaintiffs' evidence, it follows that there was sufficient evidence to support the conclusion that Murphy died in the plane crash, that defendant owned the aircraft, that the negligence of the pilot was the proximate cause of the crash, and that the pilot was defendant's agent.
Nevertheless, defendant asserts that there was no proof that its pilot, Butler, was flying the plane when it crashed. We disagree. This was an "air taxi" flight. Butler was the "pilot in command" at all times during the flight. As such, federal regulations made him "responsible for" the operation of the plane. 14 C.F.R. § 91.3; Cf. Lange v. Nelson-Ryan Flying Service, Inc., 259 Minn. 460, 108 N.W.2d 428 (1962).
From this evidence, the jury properly could infer that Butler was the pilot and that his negligence was the proximate cause of Audie Murphy's death. That negligence being imputable to defendant, the court properly denied defendant's motion for directed verdict. See Romero v. Denver & Rio Grande Western Ry., 183 Colo. 32, 514 P.2d 626 (1973).

V. DAMAGES
Defendant next claims that plaintiffs presented insufficient evidence of their net pecuniary loss as a result of Murphy's death to serve as a basis for the two and one-half million dollar verdict. We disagree.
Because damages often defy exact ascertainment, the pecuniary loss rule in wrongful death cases requires only that damages be shown with a reasonable degree of certainty. See Herbertson v. Russell, 150 Colo. 110, 371 P.2d 422 (1962). The jury should consider all pertinent factors, including:
"[T]he age, health, condition in life, habits of industry or otherwise, ability to earn money, on the part of the deceased, including his or her disposition to aid or assist the plaintiff. Not only the kinship or legal relation between the deceased and the plaintiff, but the actual relations between them as manifested by acts of pecuniary assistance rendered by the deceased to the plaintiff . . . ."
Pierce v. Conners, 20 Colo. 178, 37 P. 721 (1895).
Here, sufficient evidence was presented from which the jury could determine damages with a reasonable degree of certainty. Herbertson v. Russell, supra. The instruction given to the jury on net pecuniary loss, was based on Colo.J.I. 10:3, and is a correct *884 statement of the law. Consequently, we hold defendant's objections in regard to it are not well taken.
Nor was the damage award grossly or manifestly excessive. See Hotchkiss v. Preble, 33 Colo.App. 431, 521 P.2d 1278 (1974). To warrant setting aside a verdict based on excessive damages there must be an indication that the verdict was so grossly excessive as to indicate that the jury was influenced by factors other than proper evidence. Moseley v. Lamirato, 149 Colo. 440, 370 P.2d 450 (1962); DeMott v. Smith, 29 Colo.App. 531, 486 P.2d 451 (1971). Here, the jury had before it evidence that Murphy, a World War II hero, had a life expectancy of about 28 years, that he had in the past earned large sums of money as an actor, songwriter, and businessman, and had always provided well for his family. There was evidence that he had substantial future earning potential at the time of his death. This was a sufficient predicate upon which the jury verdict could rest.
We also hold that the court did not abuse its discretion in failing to impose sanctions when plaintiffs were unable to provide defendant with Murphy's income tax records, in allowing Mrs. Murphy to testify about the contents of the missing documents, or in denying defendant's motion for new trial on the damages issue, based upon allegedly newly discovered evidence.
We have reviewed defendant's other contentions and find them to be without merit or otherwise disposed of in our discussion of the other issues.
Judgment affirmed.
COYTE and RULAND, JJ., concur.