Adolph HANSEN, Personal Representative of the Estate of Richard R. Hansen, Plaintiff–Appellee,

v.

Victor LEDERMAN, Defendant–Appellant.

No. 85CA1621.

Colorado Court of Appeals, Div. IV.

April 7, 1988.

Rehearing Denied May 5, 1988.

Certiorari Denied Aug. 22, 1988.

Richard J. Lesch, Denver, for plaintiff-appellee.

Bennett S. Aisenberg, Denver, for defendant-appellant.

KELLY, Chief Judge.

In an action based on fraud and breach of fiduciary duty, the defendant, Victor Lederman, appeals the judgment entered on a jury verdict in favor of the plaintiff, Richard R. Hansen. Lederman contends that the trial court erred in admitting testimony by Hansen regarding a conversation with Lederman's brother, in admitting an undated and unsigned letter by Hansen to Lederman, and in the calculation of prejudgment interest. We affirm.

In 1970, Hansen, Lederman, and Lederman's brother, Marvin, formed a partnership in order to purchase and operate an apartment building known as the Thunderbird Apartments. Hansen managed the day-to-day operations of the partnership and the apartments until 1977, when a dispute arose among the partners regarding Hansen's management and accounting. The partners settled this dispute in an agreement whereby Victor Lederman purchased Hansen's interest in the partnership based on an agreed value for the Thunderbird Apartments of $725,000. The closing for this transaction took place on November 15, 1977.

Within the three months preceding November 15, 1977, Lederman had at least four telephone conversations with a third party, Trent Cole, regarding Cole's interest in purchasing the Thunderbird Apartments. Cole testified at trial that these conversations included discussion of an $800,000 offer someone had made on the building the previous year, that Lederman or the partnership would consider selling the building for a price in that range, the number and condition of the apartment units in the building, the approximate annual gross income the building generated, the downpayment necessary for any sale, and the existing first mortgage.

On November 15, 1977, the same day Lederman purchased Hansen's interest, Cole submitted a detailed written offer to Victor and Marvin Lederman to purchase the Thunderbird Apartments. On November 25, 1977, the two brothers contracted with Cole to sell the building for $825,000. The closing took place on January 3, 1978.

Although Hansen learned sometime in 1978 that the building had been sold to a third party, he did not know the terms of the sale or of Lederman's prior negotiations with Cole until November 1983. It was then that he had a telephone conversation with Marvin during which Marvin informed him of Lederman's negotiations with Cole prior to November 15, 1977.

Hansen then called Cole, who confirmed that he had spoken to Lederman several times before November 15, 1977, regarding the Thunderbird Apartments. Hansen sent a letter to Lederman claiming Lederman had breached his fiduciary duty by not disclosing the negotiations with Cole. The letter demanded a share of the $100,000 difference between the settlement price and the price Cole paid for the building. Shortly thereafter, Hansen received a letter from Lederman's attorney acknowledging receipt of Hansen's letter and stating Lederman would soon respond. When Lederman failed to satisfy the demand, Hansen filed suit on February 9, 1984.

To permit Hansen to rebut Lederman's statute of limitations affirmative defense, the parties stipulated that Hansen could testify he first learned of Lederman's prior negotiations with Cole during his Novem-

ber 1983 conversation with Marvin. As a compromise to help alleviate the hearsay problem, the parties agreed Hansen could say only that Marvin had told him "Victor had engaged in prior negotiations" with Cole.

At trial, Hansen testified he first learned the details of the sale to Cole during his 1983 conversation with Marvin. Then, when asked on direct examination what Marvin had told him, Hansen stated:

"Marvin told me that he knew that Victor Lederman and Trent Cole had discussed the terms and price of the sale of the Thunderbird Apartments prior to the time that Victor had bought the building from me."

The trial court admitted the testimony and denied Lederman's later motion to strike. The court also admitted an undated and unsigned copy of Hansen's demand letter.

The jury verdict awarded Hansen compensatory damages in the amount of $33,-333.33 and punitive damages in the amount of $3,000. The trial court later held a hearing on Hansen's claim for prejudgment interest and awarded Hansen the sum of $52,520.95 in interest from November 15, 1977, through the date of trial, July 3, 1985.

## I.

Lederman argues that the trial court erred in admitting Hansen's testimony regarding his conversation with Marvin because it was hearsay and exceeded the limits of the parties' stipulation. We disagree.

■ The three-year statute of limitations for fraud claims begins to run when the defrauded person has knowledge of facts which, in the exercise of proper prudence and diligence, would enable him to discover the fraud perpetrated against him. *Greco v. Pullara*, 166 Colo. 465, 444 P.2d 383 (1968); § 13-80-108(3), C.R.S. (1987 Repl. Vol. 6A). When the complaint shows on its face that the claim was brought more than three years after the alleged fraud and the defendant has affirmatively pled the statute of limitations, the burden is on the plaintiff to show the statute has been

tolled. *See Lucas v. Abbott*, 198 Colo. 477, 601 P.2d 1376 (1979); *Smith v. Kent Oil Co.*, 128 Colo. 80, 261 P.2d 149 (1953).

■ In the context of a fiduciary relationship, facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required. Justified reliance on representations made by a fiduciary lessens the duty of reasonable inquiry as to facts which underlie a claim for fraud. *Lucas v. Abbott, supra.*

Hansen's complaint showed on its face that the claim was brought more than three years after the alleged fraud. Lederman affirmatively pled the statute of limitations. Thus, the burden was on Hansen to show the statute had been tolled. Hansen's testimony regarding his November 1983 conversation with Marvin was relevant for this purpose.

■ Because of the fiduciary nature of the partnership relationship, Hansen's knowledge in 1978 of the sale to a third party would not, at that time, have excited his suspicion nor have imposed on him a duty to inquire as to the facts underlying his claim for fraud. It was the conversation with Marvin in 1983 that gave Hansen notice of facts which, in spite of the fiduciary relationship, gave rise to his duty of reasonable inquiry and enabled him to discover Lederman's fraud against him.

Hearsay is a statement other than one made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted. CRE 801(c). If it is the fact that a statement was made and not its truth or falsity that is relevant, it is error to exclude the statement. *Conrad v. City & County of Denver*, 656 P.2d 662 (Colo. 1982).

■ Here, Hansen's testimony regarding his conversation with Marvin was not offered to prove the truth of the matter asserted. Rather, it was offered to show the time at which Hansen received notice of the facts giving rise to his duty of reasonable inquiry to discover the fraud. It was the fact that the conversation took place in

1988, not the truth or falsity of what was said, that was relevant to the statute of limitations defense. The testimony was admissible for this limited purpose and did not become inadmissible merely because the jury might have improperly considered it in some other capacity for which it could not properly be admitted. *See Conrad v. City & County of Denver, supra; Davis v. Bonebrake*, 135 Colo. 506, 313 P.2d 982 (1957).

When evidence is admissible for one purpose but not for another, the trial court, upon request, must restrict the evidence to its proper scope and instruct the jury accordingly. CRE 105. Here, however, Lederman failed to request a limiting instruction to the jury regarding the testimony.

■ Moreover, we conclude that, in the context in which the testimony was offered, the words "discussed the terms and price" do not differ substantively from "negotiations." Therefore, the testimony as offered did not exceed the limits of the parties' stipulation, and Lederman waived any right he may have had to object to the testimony as hearsay. Thus, the trial court did not err in admitting Hansen's testimony regarding his telephone conversation with Marvin.

## II.

■ Lederman also contends that the trial court erred in admitting Hansen's undated and unsigned demand letter to Lederman because it is self-serving, hearsay, and prejudicial. We disagree.

If questioned evidence has been established by other, proper evidence to the same or similar effect, error, if any, in the admission of the questioned evidence is harmless. *Davis v. Bonebrake, supra.* Here, all of the substantive statements contained in Hansen's letter had already been established at trial by other properly admitted evidence. Hence, error in its admission, if any, was harmless.

Further, as in the case of Hansen's testimony regarding his conversation with Marvin, the letter was relevant for the limited purpose of establishing when Hansen first acquired knowledge of facts giving rise to his fraud claim. *See Lucas v. Abbott, supra; Davis v. Bonebrake, supra.* It was attached to and referenced by the reply letter from Lederman's attorney, dated November 17, 1983, which was admitted as an exhibit without objection. Lederman also failed to request a limiting instruction to the jury regarding Hansen's letter. *See* CRE 105.

## III.

Finally, Lederman asserts that the trial court erred in its calculation and award of prejudgment interest. We disagree.

## A.

■ We reject Lederman's argument that the trial court was bound by the interest figure stated in Hansen's trial data certificate, which was based on the statutory rate of 8%. *See Murphy v. Colorado Aviation, Inc.*, 41 Colo.App. 237, 588 P.2d 877 (1978); C.R.C.P. 121 § 1–18. The statute governing prejudgment interest awards, § 5–12–102, C.R.S. (1987 Cum. Supp.), requires that, when money has been wrongfully withheld, interest shall be awarded in an amount that "fully recognizes the gain or benefit realized by the person withholding such money," or "at the election of the claimant … at the rate of eight percent per annum compounded annually."

In his complaint, Hansen claimed interest based alternatively on either the 8% per annum or the "gain or benefit" methods of computing interest. The record of the interest hearing indicates that the court considered evidence showing the actual gain or benefit Lederman realized on the money he wrongfully withheld. This evidence included Lederman's financial statements, his tax returns, the testimony of his accountant, and the depositions of three officers from his bank.

The court calculated the prejudgment interest award based on three different rates of interest reflecting the gain or benefit accruing to Lederman during three different periods of withholding: (1) the statutory rate of 8% from November 15, 1977, when Lederman bought the building from

Hansen, through January 2, 1978, when he sold the building to Cole; (2) the contract rate of 10%, stated in Cole's promissory note, from January 3, 1978, through January 30, 1978, when Lederman sold Cole's note to his bank for cash; and (3) the rate of 13.3% from January 31, 1978, through the date of trial, July 3, 1985, reflecting the average rate at which Lederman borrowed money during that period.

We conclude that the trial court's award of prejudgment interest in the amount of $52,520.95 was well within its discretion, and accordingly, we will not disturb that ruling on appeal. *See Smith v. Smith,* 172 Colo. 516, 474 P.2d 619 (1970).

### B.

Finally, we disagree with Lederman's assertion that the trial court erred in not subtracting the $62,000 in capital gains tax Lederman allegedly paid on the sale of the Thunderbird Apartments from its interest calculations. This argument is based on Lederman's mistaken impression that he realized no gain or benefit from the payment of the tax.

On the contrary, Lederman did realize a benefit from paying this tax in that he avoided the consequences of not paying the tax, such as the payment of fines and penalty interest, and imprisonment. This benefit would not have accrued to Lederman had he not wrongfully withheld Hansen's share of the profits from the sale of the building. He may not claim that he derived no benefit from paying capital gains tax on money that he has wrongfully withheld.

We note further that Lederman's wrongful withholding of Hansen's share of the profits gave him additional funds with which to pay the tax.

We have considered Lederman's other assignments of error and find them to be without merit.

Judgment affirmed.

TURSI and METZGER, JJ., concur.