**Thelma HINES, Plaintiff–Appellee and Cross–Appellant,**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, Donald E. Aksamit and Frank Danicic, Individually, Defendants–Appellants and Cross–Appellees.**

**No. 89CA1489.**

Colorado Court of Appeals, Div. III.

Aug. 15, 1991.

Rehearing Denied Dec. 12, 1991.

Certiorari Denied May 11, 1992.

Radetsky & Shapiro, P.C., James M. Edwards, Steven A. Shapiro, Denver, for plaintiff-appellee and cross-appellant.

Steven E. Napper, Kathleen M. Snead, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge METZGER.

In this wrongful death action, defendants, The Denver and Rio Grande Western Railroad Company, engineer Donald Aksamit, and conductor Frank Danicic, appeal the trial court's judgment entered upon a jury verdict awarding compensatory and punitive damages in favor of plaintiff, Thelma Hines, as a result of the death of her husband, Kennedy Hines. Plaintiff cross-appeals, contending the trial court

erred in denying her motion for costs. We affirm in part, reverse in part, and remand.

In September 1985, the decedent and a friend were hiking to a fishing spot in a remote area of the Gore Canyon. While walking between the railroad tracks near the east end of the canyon, the decedent was hit by a Rio Grande train and killed. The train, carrying six empty cars and 18 cars loaded with liquid petroleum gas, had been travelling at a speed of approximately 40 m.p.h.

Representatives of the Railroad and the Federal Railroad Administration investigated the accident. The results of the pulse events data from the train's "black box" and the crew's statements conflicted in significant respects, most notably the number of warning whistles sounded prior to the time when the brakes were applied. The Railroad did not communicate with decedent's family regarding the investigation, and it did not make its findings available to them until the pre-trial discovery process. The jury returned a verdict of $160,000 for the wrongful death claim, which was reduced by 25 percent for the decedent's comparative negligence. The jury also determined that the Railroad should pay plaintiff $160,000 in punitive damages.

## I.

■ The Railroad first contends that the trial court erred in denying its motion for a directed verdict on the punitive damages claim. We agree.

The focus of the punitive damages claim centered around the Railroad's conduct of its investigation into the accident. The issue, thus, was whether the Railroad's alleged failure to inquire adequately into the circumstances of the accident and its failure to inform plaintiff promptly of the results of its investigation breached any duty owed to her. We conclude that, under the circumstances of this case, the Railroad had no such duty.

■ The question whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986). The court determines the existence and scope of the duty; that is, it rules whether and to what extent the plaintiff's interest that has been infringed by the conduct of the defendant is entitled to legal protection. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980).

■ In determining whether the law imposes a duty on a particular defendant, many factors are to be considered. These factors may include, for example, "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant." *Smith v. City & County of Denver, supra.* No one factor is controlling, and the question whether a duty should be imposed in a particular case is essentially fairness under contemporary standards, *i.e.*, whether reasonable persons would recognize a duty and agree that it exists. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987).

Plaintiff asserts that the Railroad undertook a duty to protect her interest when it began the accident investigation. She argues that the Railroad's failure to conduct an adequate investigation posed an unreasonable risk of harm to her and, therefore, its breach should find a remedy in tort.

The plaintiff seems to rely on Restatement (Second) of Torts § 323 (1965) in support of this contention. That section provides that, under the common law, one who undertakes to render services to another which he should recognize as necessary for the protection of the other's person or property is subject to liability for harm resulting from the failure to exercise reasonable care in performing the undertaking, if the failure to exercise care increases the risk of harm, or if the harm is suffered because of the other's reliance on the undertaking.

However, this general rule has been limited to apply only to those situations in which the action taken is for the benefit of another and solely not in furtherance of the interest of the one assuming to act. *Ge-*

*race v. Liberty Mutual Insurance Co.,* 264 F.Supp. 95 (D.Colo.1966); *Kingsland v. Factory Neutral System,* 145 A.D.2d 965, 536 N.Y.S.2d 336 (1988); *James v. State,* 90 A.D.2d 342, 457 N.Y.S.2d 148 (1982).

The evidence here is undisputed that the Railroad undertook the investigation solely for its own purposes. The record contains no indication that the Railroad volunteered to conduct an investigation for plaintiff's benefit, or that she requested that it do so. Her assertions that the investigation was not conducted properly cannot, by themselves, create a duty flowing to her.

■ If a claim for punitive damages is based on circumstances for which the law does not impose a duty, there is no cognizable claim. *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987). Since we conclude that under the circumstances of this case, the Railroad owed no duty to plaintiff, the trial court's refusal to dismiss the punitive damages claim was error. Therefore, the punitive damages portion of the judgment cannot stand.

In light of this ruling, we need not address the Railroad's remaining contentions regarding the insufficiency of evidence to support a punitive damages award.

## II.

■ Defendants next contend that the trial court erred by allowing the plaintiff's expert to express an opinion that their conduct in the operation of the train constituted negligence. We disagree.

Defendants do not contend that the witness was unqualified to give expert testimony. Rather, they argue that the opinion testimony of plaintiff's expert touched impermissibly on the ultimate legal issues involved in the case.

Resolution of this contention rests upon an analysis of CRE 704. Identical in pertinent part to Fed.R.Evid. 704, it provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

As noted in the Advisory Committee's Note to Fed.R.Evid. 704: "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 704 (1990). Nevertheless, the rules on expert opinion are not intended to permit experts to "tell the jury what result to reach." *See* 56 F.R.D. 284 and 285 (Advisory Committee's Note); *see also People v. Gaffney,* 769 P.2d 1081 (Colo.1989).

Thus, the determination of the admissibility of expert opinions cannot be made by resort to CRE 704 in a vacuum. Instead, the proffered expert opinion should be evaluated by considering the interrelationship of several pertinent evidentiary rules.

For instance, as is the case with all proffered evidence, the expert opinion's relevance should be established. Evidence is relevant when it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401; *see People v. Carlson,* 712 P.2d 1018 (Colo.1986); *see also People v. Lowe,* 660 P.2d 1261 (Colo. 1983). If the expert opinion is relevant, then it is generally admissible. *See* CRE 402.

■ However, CRE 702 imposes a criterion of helpfulness which must be met as well. *See U.S. v. Buchanan,* 787 F.2d 477 (10th Cir.1986). Thus, the expert witness should be appropriately qualified and the expert opinion should "assist the trier of fact to find a solid path through an unfamiliar and esoteric field." *Tabatchnick v. G.D. Searle & Co.,* 67 F.R.D. 49 (D.N.J. 1975); *see also Murphy v. Colorado Aviation, Inc.,* 41 Colo.App. 237, 588 P.2d 877 (1978).

To this end, the trial court should determine that the situation is a proper one for expert testimony and, if it is not, should exclude the opinion. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 704[02] (1990). Then, the trial court should exercise the considerable discretion afforded it by CRE 403 to exclude statements of expert opinion whose probative value is substantially outweighed by the risks of undue

prejudice, confusion, or waste of time. And finally, the court, in its discretion, may require preliminary disclosure of the data underlying the expert opinion pursuant to CRE 705 so that the jury will have adequate material with which to evaluate the opinion. *See Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989); *see also Thomas v. Pacheco*, 163 Colo. 170, 429 P.2d 270 (1967).

Plaintiff's expert here testified as follows:

"Q: As a bottom line, what are your conclusions on this accident, ma'am?

"A: In line with the above facts and circumstances, the death of Mr. Kennedy W. Hines did not have to occur, but did occur because of the negligence of the employees to brake, sound the whistle, or keep a proper lookout.

"It's my opinion the D & RGW Railroad was grossly negligent because the company displayed a conscious indifference to Mr. Kennedy W. Hines, Mr. Searle, and other people who walk down the tracks.

"Q: Why do you say that, ma'am?

"A: Because of all the facts. That they didn't warn this man. He is dead.

"Q: Do you feel their conduct was outrageous?

"A: I do.

"Q: What basis do you have for that?

"A: Just from knowing the operation of trains and operating trains myself."

Since one of the crucial issues in this case was when the train's warning whistle sounded, both experts testified extensively concerning that point. Indeed, before opining, the plaintiff's expert recited a litany of examples of specific violations of railroad warning policies and procedures that she asserted had occurred here. Defendants' expert also testified that his "general policy" concerning railroad accidents involving pedestrians is "the more warning the better." Thus, the expert opinions were relevant, helpful, and probative, and were undergirded by sufficient facts to enable the jury to make its own evaluation.

The trial court, in allowing the opinions, ruled:

"In this case it appears that the operation of the train is something outside the knowledge of the ordinary person and that there would be the need for some understanding of that, and that the testimony of an expert could be helpful to the jury.

"I am going to deny the Motion in Limine, permit the witness to express an opinion on this, and recognize that it is going to be largely a matter of the weight the jury may wish to give or not give to the opinion of the expert."

We conclude that the trial court correctly evaluated the proffered expert opinions in light of the applicable law. Consequently, we find no abuse of discretion in the ruling.

### III.

■ Defendants also contend that the trial court erred by refusing their tendered instruction regarding the duty of a locomotive engineer to apply the brakes when pedestrians are on the track. We disagree.

The jury was properly instructed that it, as the trier of fact, had the responsibility of weighing all evidence. Several instructions discussed the requirement of reasonable care in the operation of trains commensurate with the circumstances, including situations of emergency calling for quick action. We must presume that these instructions were understood by the jury, and thus, we conclude that defendants were not prejudiced by the court's refusal to instruct in the manner requested. *Atencio v. Torres*, 153 Colo. 507, 385 P.2d 659 (1963); *Arapahoe Basin, Inc. v. Fischer*, 28 Colo.App. 580, 475 P.2d 631 (1970).

### IV.

On cross-appeal, plaintiff contends the trial court erred in denying her C.R.C.P. 54(d) request for costs. We agree. *See True Temper Corp. v. C.F. & I. Corp.*, 601 F.2d 495 (10th Cir.1979).

The portion of the judgment relating to the wrongful death claim is affirmed. The portions of the judgment relating to the punitive damages claim and the disallow-

ance of costs are reversed. The cause is remanded to the trial court for entry of judgment in favor of the railroad on the punitive damages claim and for such further proceedings as may be necessary on the issue of costs.

NEY and RULAND, JJ., concur.