435 So.2d 290 (1983)
PROPRIETORS INSURANCE COMPANY, Deland Aviation, Inc., O.R. Hunt, and Dean V. West, Appellants,
v.
John and Janet VALSECCHI, Individually and As Personal Representatives of the Estate of Robert J. Valsecchi and Ann and Richard Scileppi, Individually and As Personal Representatives of the Estate of Richard William Scileppi, and Caetano Da S. Vital, Administrator of the Estate of Lawrence J. Vital, Deceased, Appellees.
Nos. 80-739, 80-740, 80-744, 80-752, 80-753 and 80-2216.
District Court of Appeal of Florida, Third District.
June 28, 1983.
Rehearing Denied August 15, 1983.
*291 Daniels & Hicks, Miami, Dolan, Fertig & Curtis, Fort Lauderdale, Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and Arthur C. Miller, III and R. Owen Ricker, Jr., Miami, for appellants.
Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Rossman & Baumberger and Robert D. Peltz, Broad & Cassel, Miami, and F. Vernon Bennett, Wells, Gattis, Hallowes, Holbrook & Conway, Orlando, for appellees.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
BASKIN, Judge.
The issues presented in this appeal arose in the context of wrongful death claims resulting from an airplane crash. The primary issue questions the choice of law to be applied to the determination of liability and damages under conflict-of-law tests. This court must decide whether the trial court should have applied Florida or North Carolina law in determining liability and awarding damages. We have carefully analyzed conflict-of-law rules pertaining to the selection of applicable law and conclude that the trial court erred in applying the law of North Carolina, the site of the crash, rather than the law of Florida, the state with the most significant relationships. Accordingly, we reverse.
*292 The crash of a Cessna airplane in North Carolina caused the deaths of Lawrence Vital, Robert Valsecchi and Richard Scileppi, all under 25 years of age. Prior to the fatal accident, Vital, Valsecchi and Scileppi were temporary residents of Florida, attending college as aeronautical students at Embry-Riddle University in Daytona Beach, Florida. In November, 1976, Vital rented a Cessna 210C from DeLand Aviation, Inc., a Florida corporation. DeLand Aviation had leased the aircraft from Florida residents, Dean West and O.R. Hunt, who were principals of DeLand Aviation. Vital and his friends, Valsecchi and Scileppi, went to visit their parents for the Thanksgiving holidays. With Vital piloting the aircraft, the three men departed from DeLand, Florida. Valsecchi and Scileppi disembarked in New York, where their families resided, while Vital continued on to his family home in Massachusetts. After the holidays, the three men commenced the final leg of their return trip at the Wilmington, Delaware airport heading toward DeLand, Florida. Shortly after departure, the pilot experienced problems and soon lost radio contact. The radar image disappeared, and the plane crashed near the Oxford-Henderson, North Carolina airport, killing all three men on board.
The personal representatives of the three decedents filed for ancillary administration in Florida and, in addition, instituted lawsuits for damages in Florida. They alleged that Hunt, West and DeLand Aviation failed to maintain the aircraft's electrical system while the aircraft was hangared in Florida and that their negligence caused the crash. Acting as personal representatives of their sons' estates, the parents of Robert Valsecchi and Richard Scileppi filed wrongful death actions against Vital, Hunt, West, and DeLand. They sought damages predicated upon pilot negligence in operating the aircraft and upon the negligence of the airplane's owners and lessors, Hunt and West, in maintaining the aircraft. In addition, they asserted they were entitled to recover from DeLand Aviation, Inc., the lessee, based upon its negligent maintenance of the airplane and from Hunt, West, and DeLand, who were vicariously liable for the pilot's negligence under Florida's dangerous instrumentality doctrine.
The pilot's estate filed a cross-claim against Hunt, West, and DeLand founded upon their alleged negligent maintenance of the airplane. Hunt, West, DeLand, and Proprietors Insurance Company, their insurer, filed a cross-claim against the pilot's estate seeking indemnity or contribution for the pilot's alleged negligence. The jury found no negligence on the part of the pilot and awarded the estates of Valsecchi, Scileppi, and Vital $750,000 each from Hunt, West, and DeLand. The trial court limited the final judgments against Proprietors to its coverage of $75,000 per passenger and $100,000 for Vital. Contending in this appeal that no coverage existed for the pilot, Proprietors seeks to overturn the dismissal of its post-trial cross-claim concerning the $100,000 judgment for Vital.
Counsel for the estates of the pilot and both passengers contended at trial that North Carolina rather than Florida law governed.[1] The trial court agreed.[2] The court selected the law of North Carolina as appropriate for trial of some issues but found Florida's dangerous instrumentality and comparative negligence doctrines applied.
At trial, the Valsecchi and Scileppi personal representatives asked the court to direct verdicts in their favor on the ground that either the pilot or DeLand Aviation or both were liable for the deaths. The court, relying on North Carolina and Florida law, *293 granted the motions and instructed the jury accordingly. The trial court ruled that if the jury found pilot error, appellants were vicariously liable to the passengers under Florida's dangerous instrumentality doctrine.[3] This question later became moot when the jury decided the pilot was not negligent. Then, applying North Carolina law pertaining to negligence, the trial court directed verdicts against Hunt, West, and DeLand. Thus, under the trial court's rulings, Hunt, West, and DeLand were responsible if the jury found that pilot error, negligent maintenance, or a combination of these factors caused the deaths.
In addition to the choice-of-law question, we are asked to review the propriety of the trial court's exclusion of testimony by DeLand Aviation employees under the Deadman's Statute, section 90.602, Florida Statutes (1979); the correctness of the directed verdicts establishing the liability of Hunt, West, and DeLand under the Florida dangerous instrumentality doctrine; and the trial court's dismissal of Proprietor's post-trial cross-claim denying coverage for Vital. We examine first the question of which law to apply.
Initially, the rule of lex loci delicti, or law of the place of the wrong, provided a simple and uniform formula for solving choice-of-law questions. Modern commentators, disenchanted with the application of the wooden lex loci rule to the complex problems of current litigation, have severely criticized the doctrine. See, e.g., Restatement (Second) of Conflict of Laws (1971); G. Stumberg, Conflict of Laws 199-212 (3d ed. 1963); Cavers, A Critique of the Choice-of-Law Problem, 47 Harv.L.Rev. 173 (1933); Cheatham & Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952); Currie in Comments on Babcock v. Jackson, A Recent Development in Conflict of Laws, 63 Colum.L.Rev. 1212, 1233 (1963); A. Ehrenzweig, The "Most Significant Relationship" in the Conflicts Law of Torts, 28 Law & Contemp.Prob. 700 (1963); Harper, Policy Bases of the Conflict of Laws: Reflections on Rereading Professor Lorenzen's Essays, 56 Yale L.J. 1155 (1947); Morris, The Proper Law of a Tort, 64 Harv.L.Rev. 881 (1951); Reese in Comments on Babcock v. Jackson, 63 Colum.L.Rev. 1212, 1251 (1963); Traynor, Is This Conflict Really Necessary?, 27 Texas L.Rev. 657 (1959); and authorities cited in 46 Cornell L.Q. 637, 640, n. 20 (1961) and 62 Mich.L.Rev. 1358, n. 3 (1964). In an attempt to avoid the often harsh result of the lex loci rule, see Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 802, n. 11 (1964), conflicts-of-law theorists proposed new approaches.
In recognition of the jurisprudential departure from the now discredited conceptual underpinnings of sovereign supremacy and vested rights embodied in the lex loci delicti rule, Comment, Conflict of Laws  Torts: Significant Relationships v. Lex Loci Delicti  Florida Enters the Modern Era, 33 U.Fla.L.Rev. 436 (1981), the Restatement (Second) promulgated guidelines to aid in the selection of the proper law through analysis of significant contacts. Restatement (Second) of Conflict of Laws, §§ 6 and 145 (1971).[4]
*294 Another modern choice-of-law approach is the "government interest analysis" theory alluded to by the dissent. This theory focuses on the interest of the state involved rather than on the individual. See Cavers, The Choice of Law Process (1965); B. Currie, Selected Essays on the Conflicts of Law, 189 (1963) (originally published in 26 U.Chi.L.Rev. 9 (1959); E. Scoles and P. Hay, Conflict of Laws, §§ 17.11-17.17 (1982); 33 U.Fla.L.Rev. 436, supra. Cases applying a Restatement (Second) approach generally do not employ an "interest analysis" test.
The significant relationships test of the Second Restatement, adopted in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980) and adhered to in State Farm Mutual Automobile Insurance Co. v. Olsen, 406 So.2d 1109 (Fla. 1981), is clearly the approved approach to conflict of laws issues in Florida. See Harris v. Berkowitz, 433 So.2d 613 (Fla. 3d DCA 1983). The dissent's reliance upon decisions applying interest analysis concepts is misguided because it disregards the separate nature of current analytical tools and thus endorses a case-by-case test dependent upon the attitudes of individual judges rather than upon the objective standards of existing law. In our view, this path leads to chaos.
Viewing the facts under a Restatement (Second) analysis, we are compelled to recognize the applicability of Florida law to the question of damages. Whereas the lex loci rule would apply North Carolina law because it is the place where the injury occurred, the significant relationships test adopted in Florida recognizes the place of injury simply as one relevant factor in choice-of-law determinations. Evaluation under the significant relationships test involves a two-pronged inquiry directed toward review of the factors listed in section 145 and in section 6. Courts applying this two-pronged test locate the state with the most significant contacts in relation to the occurrence and to the parties with due regard for the policies underlying each of the competing state's pertinent laws. See Leflar, The Torts Provisions of the Restatement (Second), 72 Colum.L.Rev. 267, 268-74 (1972). The place of injury takes precedence only when a comparison of the competing state's contacts reveals that it is the state most significantly connected to the particular issue in the litigation. This principle is clearly delineated in section 146 and in section 175 and must be applied to the case before us.
§ 146. Personal Injuries
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
§ 175. Right of Action for Death
In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities *295 of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Applying the significant relationships test, we find that since North Carolina became the place of the injury by the mere happenstance of the plane crash on its soil, it maintained no significant relationship with the occurrence or the parties. Consequently, no interest or purpose in applying North Carolina law can be ascertained. We are confronted with a situation in which the law of a state other than the state in which the injury occurred governs. According to comment e to section 145:
Situations do arise ... where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue... . (emphasis added).
See Berkowitz (applying Florida's wrongful death recovery provisions rather than damage law of Maine where fatal car accident occurred in Maine but Florida had most significant contacts as state where decedents and all parties resided and where estates were probated.) See also comment e, section 146 ("when ... the injured person is domiciled or resides or does business in the state where the conduct occurred, there is a greater likelihood that this state is to be the state of most significant relationship and therefore the state of applicable law... .") (emphasis added); comment d, section 175 ("The likelihood that some state other than that where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to the particular issue, the state of injury bears little relation to the occurrence and the parties."). In the present case, prior to the fatal accident, the decedents resided in Florida where they became acquainted while attending aeronautical school. The plane was rented in Florida from Florida residents, defendants in the action. The plane was hangared and negligently maintained in Florida. The flight began and was to end in Florida. Ancillary estates were opened in Florida, and the lawsuits were filed here. On the other hand, North Carolina's only connection to the event and the parties was the purely adventitious circumstance that the aircraft crashed on the soil within its boundaries.
The contacts held significant in Bishop are, for the most part, present here: (1) the trip was to begin and end in Florida; (2) defendants are Florida residents; (3) the relationship between the parties arose in Florida. Although the plaintiffs in this case, unlike those in Bishop, are not permanent Florida residents, neither are they North Carolina residents.[5]
Under the significant relationships test or any modern theory departing from the rigid lex loci rule, courts all over the United States apply the law of the state with relevant connection to the litigation. This point is clearly demonstrated by the classic aviation accident case which has motivated courts to apply the law of the state other than the fortuitous place of injury. See, e.g., In re Paris Air Crash of March 3, 1974, 399 F. Supp. 732 (C.D.Calif. 1975) (under an interest analysis, California law held to apply to damages recoverable by claimants from various other jurisdictions where plane, which crashed in France, was constructed, manufactured and tested in California); Gordon v. Eastern Air Lines, Inc., 391 F. Supp. 31, 33 (S.D.N.Y. 1975) (applying an interest analysis, the court found that New York governed the sole issue of plaintiff's wrongful death damages resulting from the airplane crash that occurred in Florida where Florida had "no interest *296 whatsoever in how much money a New York jury would award a New York resident in a New York court."); In re Air Crash Disaster at Boston, Masschusetts on July 31, 1973, 399 F. Supp. 1106 (D.Mass. 1975) (under Vermont's significant relationships test, court applied Vermont law to the wrongful death damages resulting from an airplane crash in Boston where decedents, Vermont domicilaries, purchased their plane tickets in Vermont, the flight began and was expected to end in Vermont and where both parties being non-residents of Massachusetts, that state's fortuitous contact with the action was insufficient); Manos v. Trans World Airlines, Inc., 295 F. Supp. 1170, 1173 (N.D.Ill. 1969) (on issue of damages, where Italy, place of the airplane crash, "was a mere fortuity in relation to the true interests ... to be served," Italian law did not apply; Wood v. American Airlines, Inc., 103 Misc.2d 431, 426 N.Y.S.2d 193 (1979) (under New York's "grouping of contacts" test, Tennessee law held to govern measure of wrongful death damages where airplane crash in Virgin Islands was purely adventitious and where Tennessee had most intimate relationship with the matter based on fact that decedents were Tennessee residents, flight originated in Tennessee and was to terminate there); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 213 N.E.2d 796, 266 N.Y.S.2d 513 (1965) (under an interest analysis, court applied Pennsylvania law to question of damages where Maryland's sole relationship with the occurrence was the fortuity of the airplane crash on its soil and where decedents were Pennsylvania residents who bought their tickets in Pennsylvania where the flight began and was to terminate); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964) (Pennsylvania court applied an interest analysis in holding that Pennsylvania law governed the measure of wrongful death damages where the site of the airplane crash in Colorado was purely fortuitous and where decedents were Pennsylvania domicilaries and the flight began and was to terminate in Pennsylvania).
The dissent suggests that lex loci delicti is appropriate even when the location of the accident is a mere fortuity. Review of the cases upon which it relies discloses the error in that proposition. First, not one of the named decisions is based upon the Second Restatement approach required by Bishop. E.g., Jones v. Wittenberg University, 534 F.2d 1203 (6th Cir.1976) (applied interest analysis); Cook v. United States, 274 F.2d 689 (2d Cir.1960) (under Federal Tort Claims Act, court applied damage law of place in which "wrongful act or omission" of United States' employees occurred); Maynard v. Eastern Air Lines, Inc., 178 F.2d 139, 140 (2d Cir.1949) (court applied law of Connecticut, site of aircrash, rather than New York law on the ground that the New York death statute did not afford recovery "for accidents occurring beyond the borders of its state," citing the lex loci delicti rule of the First Restatement as additional support); Hurtado v. Superior Court of Sacramento County, 11 Cal.3d 574, 522 P.2d 666, 114 Cal. Rptr. 106 (1974) (applying "governmental interest" analysis); Maguire v. Exeter & Hampton Electric Co., 114 N.H. 589, 325 A.2d 778 (1974) (applying "principles of preference" or "choice influencing considerations" approach).
Second, most of these cases are factually inapposite since the location of the place of injury was not a mere fortuity as it was in the present situation. For example, in Wittenberg, Ohio, the place of the fatal accident, was the temporary residence of the decedent, who attended college there, and the permanent residence of defendants, the university and the university security guard who fatally shot the decedent on university grounds. Additionally, in Maguire, New Hampshire damage law applied where New Hampshire was not only the site of the accident, but the place of decedent's employment with a New Hampshire company. Significantly, the court in Maguire noted: "Unlike automobile accidents and airplane accidents where the place of accident has been characterized as `fortuitous' ... the place of employment in New Hampshire was not `fortuitous' but stable and chosen." 325 A.2d at 779.
*297 As one last example, in Hurtado, California was not only the location of the fatal auto accident, but the domicile of the defendants. In contrast to those cases, North Carolina in the present case is the classic fortuitous accident site  where none of the parties resided, worked, attended school, or even vacationed  in short, a place with no meaningful link to the present litigation.
Furthermore, while the survivors' place of residence may offer a predicate for interest analysis cases, it serves only as an additional factor to be considered under the significant relationships test. Even if an interest analysis test were applied, however, the law of Florida, the residence of the principal defendants, would be the proper selection. Florida's interest lies in the protection of its residents from excessive financial burdens whereas North Carolina has little interest in the protection of foreign litigants, especially when the act of negligence occurred in a foreign jurisdiction.
The law of conflicts cannot rest upon the proposition propounded by the dissent that lex loci applies when it is more generous than the state of the survivors' residence.[6] In those cases which appear to reach such a result, other significant contacts are evident. See Bonn v. Puerto Rico International Air Lines, 518 F.2d 89 (1st Cir.1975); Summers v. Interstate Tractor & Equipment Co., 466 F.2d 42 (9th Cir.1972). Compare Olsen (applying more restrictive recovery policy of the lex loci, Illinois, by finding that the action was governed by Illinois' law of contributory negligence rather than Florida's comparative negligence doctrine).
In conclusion, it is apparent that this court is bound to follow the supreme court decision in Bishop adopting the Second Restatement rule. The significant relationships test applies and mandates reversal. North Carolina had nothing to do with the parties or the cause of the accident. Its ties to the litigation are too insignificant to warrant the application of its law. Accordingly, we hold that Florida law governs.
The next question we consider pertains to the exclusion of testimony under the Deadman's Statute.[7] Appellants maintain that the trial court improperly excluded testimony by DeLand Aviation employees indicating that they instructed the pilot, Vital, to fly under visual flight rules and only in the daytime. The Deadman's Statute provides that communications between parties interested in the litigation and a deceased person cannot be introduced into evidence in a suit against the personal representative. However,
The test of the interest of a witness ..., is whether he will gain or lose by the direct legal operation and effect of the judgment, or whether the record in the case will be legal evidence for or against him in some other legal action. It must be a present and vested interest and not one uncertain, remote, or contingent.
Parker v. Priestley, 39 So.2d 210, 213 (Fla. 1949). It is well settled that an employee or mere agent is not an interested party disqualified from testifying under the Deadman's Statute. Parker; Allstate Insurance Company v. Doody, 193 So.2d 687 (Fla. 3d DCA 1967). Since a judgment in this case would have no direct effect upon DeLand's employees, the employees did not possess the legally recognized interest required to trigger the testimonial bar of the Deadman's Statute. See Matthews v. Hines, 444 F. Supp. 1201 (M.D.Fla. 1978); Parker; Broward National Bank of Fort Lauderdale v. R. Bear, 125 So.2d 760 (Fla. 2d DCA 1961). We therefore hold that the trial court's exclusion of the DeLand employees' testimony, which was relevant to establish proximate cause, constituted reversible error. See New York Life Insurance Company v. Childs, 252 So.2d 288 (Fla. 3d DCA 1971). The remaining issues are without merit.
*298 Reversed and remanded for proceedings consistent with this opinion.
SCHWARTZ, Chief Judge (dissenting).
I completely disagree with the majority's resolution of the primary issue in the three wrongful death cases before us.[1] I believe that the law of North Carolina, where the decedents' plane crashed, controls the determinative question of the damages recoverable for their deaths. Since, although for a different reason, that was the ruling of the trial court, I would affirm the judgments under review.
The series of events with which we are concerned began when Lawrence Vital, a student at the Embry-Riddle aeronautical flight school in Volusia County, rented a Cessna 210C aircraft from Deland Aviation, Inc. for a Thanksgiving trip to his home in Massachusetts. The plane was owned by Dean West and O.R. Hunt, who were principals of Deland Aviation. Vital left for the North with two passengers, Robert Valsecchi and Richard Scileppi, both fellow students who lived in New York. Vital dropped them off, then picked them up in New York, and was on the way back to Deland when, on November 28, 1976, the plane crashed near the Oxford-Henderson Airport in Oxford, North Carolina. All on board were killed.
At their deaths, Vital was 21, and Valsecchi and Scileppi were 20 years of age. They were unmarried, had no dependents and were survived by their parents who as Florida ancillary administrators respectively brought wrongful death actions in the Dade County Circuit Court. The Valsecchis and Scileppis sued Vital's estate, claiming he had negligently operated the plane. All three families sued Deland Aviation, Hunt and West on the ground that their improper maintenance of the plane's electrical system was a cause of the crash.
Of the many legal issues raised at the trial, certainly the most important was the question of what law governed the plaintiffs' measure of damages. The defendants and their carrier, Proprietors Insurance Company, took the position that the 1976 Florida wrongful death law, under which very limited damages were recoverable, controlled. Bound, however, by the then-prevailing doctrine that the lex loci delicti invariably applied,[2] the trial court ruled that North Carolina law governed this issue.[3] Under that law,[4] the jury found that each set of parents had sustained $750,000 in damages.[5] On the liability issue the jury entirely exonerated Vital's estate, finding against only Deland Aviation, Hunt and West. Its verdict therefore reflects the conclusion that the negligent maintenance of the Cessna was the sole cause of the accident.[6]
The appellants' claim of error in the choice-of-law ruling is founded upon the supreme court's landmark decision in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), which was released after the filing of these appeals. Bishop renounced the inflexible rule that the law of the state of injury always and mechanically applies in tort cases, and adopted instead the "significant *299 relationships" test embodied in Sections 6, 145-146 of the Restatement (Second) of Conflict of Laws.[7] But the court was careful to point out in Bishop[8] and to repeat with emphasis in State Farm Mutual Automobile Ins. Co. v. Olsen, 406 So.2d 1109 (Fla. 1981) that the lex loci delicti remains significant, indeed presumptively controlling, in making the proper choice of law under the "new" test. See also, Steele v. Southern Truck Body Corp., 397 So.2d 1209 (Fla. 2d DCA 1981). This is essentially because applying that law will automatically and in each instance vindicate the important concerns of achieving predictability and ease in the determination of the applicable law, as set out in Section 6(f)(g) of the Restatement. Hence, that law is to be applied "under most circumstances," Bishop, 389 So.2d at 1001; "barring other factors ... which may outweigh [it] as a controlling consideration," Olsen, 406 So.2d at 1111, or as stated in § 146, quoted and emphasized in both decisions, "unless, with respect to the particular issue, some other state has a more significant relationship" to the occurrence and the parties. This general principle of preference for the law of the place of injury clearly applies to the present problem. Sections 175 and 178 of the Restatement state:
§ 175. Right of Action for Death
In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
* * * * * *
§ 178. Damages
The law selected by application of the rule of § 175 determines the measure of damages in an action for wrongful death.
Under the thus-clearly established law of our state, then, the issue is properly framed as whether Florida  whose law is the only one proposed by the appellants  has a more significant relationship than North Carolina to the particular issue of the recoverable items of damages in these wrongful death cases so that it is appropriate to apply the features of its law on the subject.
*300 In resolving that question, it is necessarily first required that we identify the content and bases of the laws of the competing jurisdictions. (Indeed, the majority's total failure even to undertake this task is, I believe, a reflection of its basic error; it does not recognize that it is the conflict only as to the particular issue in question with which we are, or rather should be, concerned.) Such an assessment reveals  and the ardor with which the parties join issue on the point confirms  that the choice is an extremely clear-cut one. The North Carolina Wrongful Death Act, Section 28A-18-2, N.C. Gen. Stat. (1969), provides, as the $750,000 jury awards vividly demonstrate, for the recovery of a broad panoply of tangible and intangible losses sustained by the decedents' survivors. See Brown v. Moore, 286 N.C. 664, 213 S.E.2d 342 (1975). In fact, the elements of damages are not entirely dissimilar from those which would be recoverable for the boys' deaths under the present law of Florida. See e.g., Perkins v. Variety Children's Hospital, 413 So.2d 760 (Fla. 3d DCA 1982); Singletary v. National R.R. Passenger Corp., 376 So.2d 1191 (Fla. 2d DCA 1979). The rub is that the Florida law was very different when the accident occurred. In Hanley v. Liberty Mutual Ins. Co., 334 So.2d 11 (Fla. 1976), the supreme court held that by reducing the age of majority from 21 to 18 in 1973, the legislature had sub silentio similarly amended the definition of a "minor child" in the Wrongful Death Act, Sec. 768.18(2), Fla. Stat. (1973). Although this inadvertence was immediately corrected in the very next legislative session, Ch. 77-468, Laws of Florida, thus recreating a substantial cause of action for the parents of 20-year-old unmarried decedents like Valsecchi and Scileppi; and the statute has since been amended to include children under 25 like the 21-year-old Vital, Ch. 81-183, Laws of Florida, the fact remains that, because of Hanley, the boys' estates could have recovered only funeral expenses and loss of services, which were nominal in Vital's case and non-existent in the other two. Sec. 768.21, Fla. Stat. (1975). I cannot accept the appellants' contention or the majority's holding that this result represents the correct choice of law.
To the contrary, it clearly appears from the analytical process mandated by Bishop and Olsen and from numerous decisions which have applied the same standards that the trial court's determination was entirely correct. In accordance with the general rule to which I have referred, a significant majority of wrongful death cases with relevant contacts to multiple states have applied the law of the state where the accident took place  even though, as here, that location was no more than a mere fortuity. E.g., Jones v. Wittenberg University, 534 F.2d 1203 (6th Cir.1976); Cook v. United States, 274 F.2d 689 (2d Cir.1960); Maynard v. Eastern Air Lines, Inc., 178 F.2d 139 (2d Cir.1949); Hurtado v. Superior Court of Sacramento County, 11 Cal.3d 574, 114 Cal. Rptr. 106, 522 P.2d 666 (1974); Maguire v. Exeter & Hampton Electric Co., 114 N.H. 589, 325 A.2d 778 (1974); cases collected, Reporter's Note, Restatement (Second) of Conflict of Laws, § 178 (1971); Annot., Conflict of laws as to measure or amount of damages in death actions, 92 A.L.R.2d 1180, 1185-93 (1963).
The foremost, indeed virtually the only, exception to this rule is that which recognizes that the state with the primary concern with the question is the one where those who would receive the damages reside. E.g., Reich v. Purcell, 67 Cal.2d 551, 63 Cal. Rptr. 31, 432 P.2d 727 (1967) (Missouri had no interest in having its statutory limitation on damages applied in action brought by survivors of wrongful death victim who was killed there, where none of the parties resided in that state and application of its laws would serve only to defeat the interests of the litigants and their respective states of domicile); Manos v. Trans World Airlines, Inc., 295 F. Supp. 1170, 1173 (N.D.Ill. 1969) ("The predominant interests to be served on the issue of damages are those of the states containing the people or estates which will receive the recoverable damages, if any, for their injuries or their decedent's death."). Accordingly, a number of cases involving similar events apply the wrongful death damages law of the jurisdiction *301 where the survivors live, rather than the lex loci. E.g., Rosenthal v. Warren, 475 F.2d 438 (2d Cir.1973), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973) (New York's interest in protecting its domiciliaries against wrongful death limitations outweighs the interest of Massachusetts in restricting verdicts for wrongful deaths caused by Massachusetts citizens or occurring in Massachusetts); Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965) (applying law of Iowa, rather than Minnesota where the accident occurred, since the plaintiffs were Iowa residents acting on behalf of Iowa decedents); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 213 N.E.2d 796, 266 N.Y.S.2d 513 (1965) (applying liberal wrongful death statutes of Pennsylvania, which had greatest concern and contact with survivors of Pennsylvania residents who died in Maryland air disaster); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964) (applying Pennsylvania law rather than Colorado, the crash site, in view of Pennsylvania's concern with well-being of surviving Pennsylvania dependents). Although the opinion contains some language which is contrary to the present analysis, this is true of this court's decision in Harris v. Berkowitz, 433 So.2d 613 (Fla. 3d DCA 1983) (applying law of Florida, domicile of survivors, which permitted full recovery rather than limitation provided by law of Maine, the site of accident). And in Shaheen v. Schoenberger, 92 Mich. App. 491, 285 N.W.2d 343 (1979), the court applied the Michigan damages law, rather than the very Florida statute I reject here, to the April 8, 1977 Florida death of an unmarried Michigan resident.
This principle does not help the present appellants. This is so not only because the decedents' parents reside in New York and Massachusetts, and not in Florida,[9] but, more importantly, because the cases which adopt the law of the beneficiaries' residence seem to do so only when that damages law is more expansive than that of the place of the injury. See also, Murphy v. Colorado Aviation, Inc., 41 Colo. App. 237, 588 P.2d 877 (1978) (applying more generous law of defendants' residence). This is clearly shown by the cases which contrarily apply the lex loci when it is more generous than the residence of the survivors, e.g., Bonn v. Puerto Rico International Airlines, Inc., 518 F.2d 89 (1st Cir.1975) (interest of Virgin Islands in limiting recovery against its domiciliaries to pecuniary losses would not be thwarted by having its plaintiff-domiciliaries recover intangible damages from foreign tortfeasors under the law of the place of injury); State ex rel. Broglin v. Nangle, 510 S.W.2d 699 (Mo. 1974) (applying Texas wrongful death statute, which permits unrestricted judgments against corporate residents who commit torts within the state, rather than the wrongful death damages provision in plaintiff's decedent's state of domicile, which provides only for spousal recovery). Compare, Harris v. Berkowitz, supra. It thus appears that the only "significant relationship" under the principles set forth in § 6 which is sufficient to overcome the lex loci on this "particular issue" is one involving a policy to afford the survivors more adequate compensation than that of the place of injury. I have discovered no previous case in which  as appellants would have it  a vastly more restrictive law of wrongful death damages than that of the locus has been applied.
And there is no reason whatever to make this case the first. As this discussion of the most important factor  the residence of the survivors  has already demonstrated, the process of making a Restatement-type choice-of-law consists of much more than  as has the court  quantifying and comparing the gross number of "contacts" a given case has with multiple jurisdictions and then applying the law of the one with the most; it requires, rather, an analysis of the effect of a particular doctrine upon the relevant policies of the states involved as they concern the particular issue in controversy. *302 See Case Comment, Conflict of Laws  Torts: Significant Relationships v. Lex Loci Delicti  Florida Enters The Modern Era, 33 U.Fla.L.Rev. 436, 445-46 (1981). Viewed in that context, I am unable to discern even the relevance of the several Florida "contacts" cited by the defendants and the court to any pertinent policy of this state. In fact, the 1976 damages law does not embody what may fairly be called the "policy" of Florida in such matters at all. Quite the opposite. While that general policy is "to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer," Sec. 768.17, Fla. Stat. (1981), the law relied upon is directly to the contrary of this statement and is the result solely of a chronological and statutory quirk which was quickly remedied by the legislature. To apply the 1976 statute in the face of our policymakers' subsequent conclusion that it was unjust in the first place is to substitute, for a mechanical rule which was abandoned in the very name of rationality, another just-as-blindly-determined result. But this, it seems to me, is just what the majority has mistakenly done. As was said in Summers v. Interstate Tractor & Equipment Co., 466 F.2d 42 (9th Cir.1972):
We must next examine the contacts of Oregon and the interest of that state in the application of its law limiting recovery in wrongful death actions. The deceased was a resident of Oregon, the truck was leased in Oregon by an Oregon corporation, and the plaintiffs were Oregon residents at the time of the accident. However, it is clear that at the date of the accident, Oregon had no interest in the application of its law limiting damages. The amendment repealing that law had passed the legislature and had been signed by the governor prior to the accident. Thus, although the limitation was still technically in effect, the policies and interests supporting the limitation had been officially rejected and abandoned in favor of the amended legislation which permits full compensation to the accident victim.
Accordingly, we hold that the district court correctly determined that an Oregon court would have applied Washington law on the issue of quantum damages.
466 F.2d at 49.
In any event, the facts, for example, that the fatal trip began and was to end in Deland, and that the decedents were temporary residents and had ancillary administrations set up here to maintain these actions do not provide legally significant support for the conclusion that almost nothing may be recovered for their deaths. Likewise, since there should be no parochial or prideful interest in applying the law, whatever its content, of our own jurisdiction, it is of no moment that Florida is the forum state. § 6(b). The same is true of the factors upon which the most emphasis is placed: that the defendants' residence and the place of their wrong were both in Florida.[10] There is, to repeat, no Florida policy  as if, for example, there were a blanket "cap" on wrongful death damages  to protect Florida domiciliaries from responding to an adequate or reasonable award. See also Harris v. Berkowitz, supra (Florida defendants subject to broad Florida wrongful death measure of damages in action arising in Maine).
The only general consideration which even may be pertinent to the locations of the wrong and the wrongdoers is "the protection of justified expectations." § 6(d). This element is, however, not generally applicable to tort actions on the theory that one does not ordinarily decide to act with or without due care depending upon the extent of his potential legal liability for that conduct. Restatement (Second) of Conflict of Laws, Explanatory Notes § 6, Comments g and i at 15-16; In re Air Crash Disaster *303 at Boston, Mass. on July 31, 1973, 399 F. Supp. 1106, 1111 n. 8 (D.Mass. 1975). This is even more obviously true in the present context. First, as the renters of aircraft, the defendants were necessarily aware that they might fly over and crash in any of a number of states besides Florida. See Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L., 422 F. Supp. 405 (N.D.Ill. 1976). More important to the issue before us, the defendants did not rely  and, if so, did not do so "justifiably"  upon the cruel but accurate joke that it may be cheaper to kill than to injure and that it was particularly inexpensive to kill an unmarried person between 18 and 25 in 1976.
Reverting to the appropriate choice-of-law analysis, it is the policy of this state to discourage rather than to indulge its residents in any negligent conduct which is even assertedly founded upon such an expectation. In this respect, this case is the conceptual equivalent, although the factual obverse, of Murphy v. Colorado Aviation, Inc., supra, in which the Colorado court applied the liberal wrongful death damages law of that state, where the defendants resided and in which their negligent conduct took place, rather than the restrictive law of Virginia, where the plane crashed. The basis of this holding was that the imposition of reasonable damages would uphold Colorado's policy of discouraging negligent conduct. So here, Florida's equally inarguable liability policy of promoting the proper maintenance of Florida-based airplanes requires that the defendants meaningfully answer for their breach of that duty. In the present factual-legal situation, that would occur, paradoxically enough, only if the Florida damages law, which would impose no real burden on the negligent defendants, is disregarded. See also, Steele v. Southern Truck Body Corp., supra. For all these reasons, it is apparent that Florida has no cognizable interest in the application of its law to this case,[11] much less, as required, a more significant relationship than North Carolina. Bishop v. Florida Specialty Paint Co., supra; State Farm Mutual Automobile Ins. Co. v. Olsen, supra. That law was therefore correctly applied below.
The defendants' most significant point on liability challenges the trial judge's exclusion, under the Deadman's Statute, of testimony concerning a purported pre-flight conversation between Vital and an employee of Deland Aviation. Unlike the majority, I find no reversible error in this ruling. See, Atlantic Coast Line R. Co. v. Mallard, 54 Fla. 143, 44 So. 366, 372 (1907); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Atlantic Coast Line R. Co. v. Ganey, 125 So.2d 576, 578 (Fla. 3d DCA 1960); Sec. 90.602, Fla. Stat. (1979). Since I believe the remaining issues are either also without merit[12] or would be mooted[13] by my conclusions on the other questions, I would entirely affirm the judgments below.[14]
NOTES
[1] The application of North Carolina law would produce a result different from the application of Florida law with regard to damages for wrongful death, liability under the dangerous instrumentality doctrine, and contributory negligence versus comparative negligence. Recovery would be greater under North Carolina's wrongful death act, under Florida's comparative negligence doctrine, and under Florida's dangerous instrumentality doctrine.
[2] The trial court did not have the benefit of Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980) when it ruled.
[3] Under Florida's dangerous instrumentality doctrine:

[A]s a matter of law the relationship of principal and agent is raised out of the factual situation. When one permits another to operate his automobile under his license, he becomes as a matter of law the principal and the driver becomes his agent for the purpose.
Weber v. Porco, 100 So.2d 146 (Fla. 1958). The doctrine applies with the same force to airplanes. Orefice v. Albert, 237 So.2d 142 (Fla. 1970). The application of the doctrine to automobiles and airplanes is not based on the theory that the instrumentality itself is dangerous, but upon the theory that the instrumentality may become dangerous in operation. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920).
[4] § 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
§ 145. The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) The domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
[5] The question of whether the law of New York or of Massachusetts applies is not properly before this court.
[6] If "greatest recovery" were the sole criterion, any state with any arguable tangential interest in the litigation could be arbitrarily selected by any plaintiff. It is also improbable that the supreme court intended to confer the greatest liability upon the airline in every case.
[7] § 90.602, Fla. Stat. (1979), formerly § 90.05, Fla. Stat. (1975).
[1] For an explanation of the tone of this opinion, see Insurance Co. of North America v. Pasakarnis, 425 So.2d 1141, 1142, n. 1 (Fla. 4th DCA 1982) (Schwartz, A.J., dissenting).
[2] Hopkins v. Lockheed Aircraft Corp., 201 So.2d 743 (Fla. 1967).
[3] Any controversy concerning the lower court's other choice-of-law rulings that Florida comparative negligence and dangerous instrumentality principles applied to the effect of any negligence of Vital would be mooted by the jury finding in favor of his estate and my conclusion that it should be affirmed.
[4] I find without merit the appellant's contentions that the jury charges were erroneous and the verdicts excessive under North Carolina law.
[5] Upon Proprietors' motion, the judgments against the insurer were reduced to the amounts of its coverage, $100,000 in the case of the operator-lessee, Vital, and $75,000 each for the passengers, Scileppi and Valsecchi. See Proprietors Ins. Co. v. Valsecchi, 385 So.2d 749 (Fla. 3d DCA 1980).
[6] The defendants do not challenge the sufficiency of the evidence to support the finding of their liability.
[7] § 6. Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
§ 145. The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
§ 146. Personal Injuries
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
[8] It should be noted that Bishop did not hold that the lex loci might not be applied, upon proper analysis, in the case itself.
[9] Because the appellants argue only that Florida, instead of North Carolina, law should apply, we are not informed  and need not concern ourselves  of the contents of the laws of New York and Massachusetts.
[10] It should be noted that Vital's allegedly negligent flying took place in either North Carolina, Virginia or some other state between New York and the crash. The fact that Vital was found not guilty does not detract from the importance of using North Carolina, as the law of certainty and ease in determination, rather than having to choose from that of several possible jurisdictions involved in a single cause.
[11] I point out that if one or more jurisdictions other than the locus have a relationship to the occurrence roughly equal to that of the locus or to each other  as in this case between New York and Massachusetts, on the one hand, and Florida, on the other  the lex loci would nevertheless prevail since, in such a legal dogfall, there is no state with a clearly "greater" interest than the place of injury. In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d 594 (7th Cir.1981), cert. denied, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); Bing v. Halstead, 495 F. Supp. 517, 520 (S.D.N.Y. 1980) ("Since the interest analysis does not point clearly to the law of any jurisdiction, the law of the place where the tort occurred prevails.").

I place these observations only in a footnote, because, as noted in the text, I do not believe that the degree of Florida's relationship, considered in the light cast by § 6, comes even close to that of North Carolina.
[12] See note 4, supra.
[13] See note 3, supra.
[14] At a minimum, in view of the change in the law which has occurred since the trial, I would remand for an initial consideration below, see City of Coral Gables v. Puiggros, 376 So.2d 281, 284-85 (Fla. 3d DCA 1979), of the content of the law of Massachusetts and New York and whether, applying the principles outlined in this opinion, they should be applied to the wrongful death damages issue in the three respective cases. If the trial court so rules, a new trial or trials on damages only under the pertinent law should be conducted.